# Senatorial Courtesy

The custom known as "senatorial courtesy," whereby certain nominations to federal office have been objected to by an individual senator on the ground that the person nominated is not acceptable to him, appears recently to have been limited to local offices of the federal government.

May 29, 1942

MEMORANDUM OPINION FOR A UNITED STATES SENATOR[*]

The custom known as "senatorial courtesy" is not a formal rule of the Senate, and is not included in the published rules of that body. The term is used to refer to a practice of long standing whereby certain nominations to federal office have been objected to by an individual senator on the ground that the person nominated is not acceptable to him. The question of whether this practice is in any sense justifiable or desirable is one which the Senate itself must decide. In this memorandum I am merely calling attention to relevant authorities and precedents, without attempting to state my own personal views on the desirability of the practice or, of course, attempting to advise the Senate.

If it be conceded that the practice may in certain instances be justifiable and even desirable, in sound reason it would seem that the exercise of the practice should be limited to cases in which a senator makes objection to an individual who is a resident of the senator's own state, and has been nominated for local federal office in that state. The argument is advanced, perhaps not without some merit, that the senator is in a position to report to his colleagues the views of his constituents as to the qualifications of the individual in question—an individual whose duties will bring him in intimate contact with the daily lives of those constituents. This argument would not seem to be applicable to positions of national importance, the duties of which are not limited to any one state. As to such a position, an individual senator would seem to be acting in his capacity as a member of the council of elder statesmen of the nation, rather than as a representative primarily of his own constituents.

Expressions by distinguished members of the Senate in recent years have tended to be in accord with the view that senatorial courtesy should apply only to local offices, the duties of which are limited to the state of the objecting senator. For example, on March 23, 1932, Senator Watson said:

> Mr. WATSON. . . . [W]hen I came here I adopted the policy of voting against the confirmation of any man appointed to a Federal

---

[*] Editor's Note: This memorandum was conveyed under cover of a letter from Assistant Solicitor General Cox to Senator George L. Radcliffe of Maryland, stating as follows: "The Attorney General has asked me to prepare and send to you a memorandum on the custom known as 'Senatorial Courtesy.' I am herewith transmitting a copy of such a memorandum."

position if and when a Senator from the State in which he lived rose in his place on the floor of the Senate and stated that the appointment was personally obnoxious and personally offensive to him. Originally that rule was followed without regard to the field of activity of the appointee; that is to say, if a man were appointed to office anywhere and a Senator rose to say the appointment was personally offensive, it was regarded as sufficient to cause rejection. But about 10 years ago there was a modification of the rule here, and I was one of those who led the fight to bring about the modification.

. . . .

Mr. NORRIS. The Senator does not mean to say there is a rule on that subject in the Senate?

Mr. WATSON. No; I do not mean to say there is a rule; but there is a practice; if the Senator please, an unwritten rule. . . .

It is a practice or custom that has been followed; so that where a man is appointed to serve wholly within the State represented by the Senator who makes the objection, in such a case his objection on such grounds is sufficient reason for rejection.

75 Cong. Rec. 6729.

On March 23, 1934, the following colloquy between Senator Overton and Senator Barkley occurred:

Mr. OVERTON. . . . Mr. President, let me make the additional statement that I understood that whenever a Senator from a State made an objection to the appointment of someone who was to discharge the duties of an office that was wholly intrastate, and based that objection upon the ground that the person named was personally obnoxious to him, the Senate respected that objection. . . .

Mr. BARKLEY. . . . I realize that from time immemorial, where a Senator objects to a nomination or appointment of a citizen of his State to a local office, and states that the appointment is personally objectionable and obnoxious to him, the Senate heretofore, almost as a universal rule—which does not have the force of law, but is the result of courtesy—has respected that objection, and has refused to confirm the nominee. In recent years, I think it ought to be said, there has been some modification of that unwritten rule to the extent of asking or expecting the Senator who makes the objection on per-

sonal grounds to present some reason for the objection. Otherwise its arbitrary exercise would make it impossible for an Executive to appoint anybody in the State who could be confirmed.

78 Cong. Rec. 5251.

Similarly, on June 29, 1939, Senator Wheeler said:

> In the 16 years I have been a Member of the Senate I have not known the Postmaster General of the United States to name appointees in a particular State over the objection of either one of the Senators. Perhaps it has been done; but, if so, it has never been called to my attention during my service in the Senate. . . .
>
> It has always been recognized that a different rule applies to appointments outside the State from that applying to appointments within the State.

84 Cong. Rec. 8225, 8226.

Leading text writers, apparently without exception, have indicated that senatorial courtesy should be confined to local offices. To quote:

> "[T]hrough the development of what is known as the 'courtesy of the Senate,' the Senators from each state when they belong to the same political party as the President generally control the nominations to local offices of the national government within their own state." John A. Fairlie, *The National Administration of the United States of America* 45–46 (1905).

> "The Constitution provides that appointments to federal office shall be made by the President with the advice and consent of the Senate. But in consequence of the custom known as 'senatorial courtesy,' when the President makes an appointment to a local federal office he is virtually obliged to obtain the consent of the senators from the particular state in which the office is located, if they belong to his party. Otherwise the Senate will not approve the appointment." James Wilford Garner & Louise Irving Capen, *Our Government: Its Nature, Structure, and Functions* 263 (1938).

> "In late years, however, there has come into existence the custom known as 'senatorial courtesy,' according to which the President must obtain in advance the approval of the senators from the particular state in which an office to be filled is located, provided they belong to his political party. If he refuses to do so and nominates a

person who is objectionable to the senators from that state, the other senators as a matter of 'courtesy' to their offended colleagues will come to their rescue and refuse to approve the appointment. It has come to pass, therefore, that individual senators in many cases are virtually the choosers of federal officers in their states." *Id*. at 333.

"A class of important federal offices scattered among the states, though nominally filled by the President with the advice and consent of the Senate, is subject largely to the control of the latter, as a result of a time-honored practice known as 'senatorial courtesy.' Under its power to advise and consent, the Senate does not officially suggest names to the President, but it will ratify nominations to many offices only under certain conditions. If either one or both of the Senators from the state in which the offices under consideration are located belong to the President's political party, then executive freedom of choice almost disappears." Charles A. Beard, *American Government and Politics* 151 (8th ed. 1939).

Haynes, in his *Senate of the United States*, has perhaps the most complete discussion of the subject. He cites a few instances in which attempts were made to apply the practice of senatorial courtesy to nominations to national offices, though it is clear that he does not approve of such application. He refers to the Rublee incident in 1916, and states that Senator La Follette, in challenging Senator Gallinger's request for application of the practice, declared that "this was the first time since he had been in the Senate that the 'personally obnoxious' rule had been applied to a national appointment." 2 George H. Haynes, *The Senate of the United States: Its History and Practice* 741 n.2 (1938).

As the Rublee incident shows, individual senators have not at all times agreed upon the extent to which the practice should be applied. Senatorial courtesy is, after all, simply based on custom, the boundaries of which may change from time to time, and which can never be said to be subject to exact definition. If a senator wishes to do so, he may object to any nomination on whatever ground he sees fit. His colleagues in the Senate will then judge whether these objections should be given weight. The purpose of this memorandum is to point out that the views expressed in recent years by some of the leading members of the Senate and by text writers have tended in the direction of limiting the practice to local offices.

Such examination of the actual precedents in the Senate as has been made in the limited time at my disposal appears to indicate that senators have from time to time attempted to invoke the practice of senatorial courtesy in respect of offices of national importance, and that in a few cases the Senate has in fact failed to confirm the nominee. In most, if not all, of these instances, however, it would appear that the Senate's action was based on considerations independent of the objection so raised. In no case which has come to my attention—not even the Rublee case—

does it appear that such a nomination was rejected solely on the ground of senatorial courtesy.

OSCAR S. COX
*Assistant Solicitor General*